E. E. SHELLEY and CORDIA SHELLEY v. OZARK PIPE LINE CORPORA-
TION, Appellant.—37 S. W. (2d) 518.

Division Two, March 25, 1931.

*Koerner, Fahey & Young* and *Walker & Skinner* for appellant.

*Arch A. Johnson* and *Sam M. Wear* for respondent.

WESTHUES, C.—This cause was certified to this court by the Springfield Court of Appeals because of the dissenting opinion and request of Cox, P. J., on the theory that the majority opinion on the question of *res judicata* is in conflict with Charles v. St. Louis M. & S. E. Railroad Company, 124 Mo. App. 293, and Womach v. City of St. Joseph, 201 Mo. 467. For a full statement of the cause, see 2 S. W. (2d) 115. Only so much of the evidence and pleadings will be stated as we deem necessary to dispose of the issues presented.

Plaintiffs filed two cases against the defendant company. The first case is reported in 247 S. W. 472. In that case plaintiffs filed a petition in the Circuit Court of Greene County, alleging, in substance, that defendant company had so carelessly and negligently maintained its pipe line through plaintiffs' land as to permit large quantities of crude oil to escape and to permeate and saturate the ground of plaintiffs' farm, thereby poisoning and contaminating the water, etc., all to their damage in the sum of $3,000.

For the purpose of this opinion, we are treating the petition as pleading and alleging permanent damages. The instruction on the measure of damages, given at plaintiffs' request, authorized the jury

to assess only such damages as had accrued to the time of the trial in October, 1921. [See 247 S. W. 472.] The jury returned a verdict for plaintiffs for $1,000, and this judgment was affirmed by the Court of Appeals.

In the second suit, the case now before us, plaintiffs' petition is, in substance, the same as in the first case, except that it alleges that defendant company so carelessly and negligently maintained its pipe line from and after January 1, 1922, as to permit large quantities of oil to escape, etc., to plaintiffs' damage, in the sum of $3,000. For a comparison of the petitions, see 2 S. W. (2d) l. c. 119, where they are printed in full.

In the second trial plaintiffs asked and the court gave an instruction permitting the jury to assess such damages as were sustained as a result of oil escaping from defendant's pipe line since January 1, 1922, to the time of the trial. The court also instructed the jury in part as follows:

"The court instructs the jury that if you find and believe· . . . that said pipe line is and ever since the 1st day of January, 1922, has been used by the defendant for the purpose of conveying oil, and that defendant has since January 1, 1922, negligently maintained said pipe line, and because of such negligence, if any, oil has escaped from said pipe line and permeated through the ground and come in contact with the water in plaintiffs' said well and the waters in said spring branch since January 1, 1922, and if you further find that because of such oil so coming in contact with said water, if it did so, the water of plaintiffs' said well and the waters in said running stream or spring branch have at times been rendered unfit for use, and that by reason thereof the reasonable value of the use and enjoyment of plaintiffs' said farm as a home has been depreciated, then your verdict should be for the plaintiffs, and against the defendant, Ozark Pipe Line Corporation.''

The jury assessed plaintiffs' damages at the sum of $2500. The trial court ordered a *remittitur* of $1,000, to which plaintiffs agreed, and judgment was entered for $1500, from which judgment defendant company appealed to the Springfield Court of Appeals. The Court of Appeals, in the majority opinion, found there was sufficient evidence to support plaintiffs' contention that their water supply was contaminated by oil as alleged in the petition. [2 S. W. (2d) l. c. 116 to 119.] The court, however, in the majority opinion, reversed the case, holding the former suit and judgment to be a bar to any future action for the alleged injury; that plaintiffs' petition in the first case alleged and pleaded permanent damages and, therefore, plaintiffs are estopped to bring a second action, even though plaintiffs' instruction limited the recovery to damages sustained to the time of the trial. The evidence clearly indicated that the damages caused by the escape of oil was temporary and that the effect

of the oil saturated in the soil would disappear entirely within five years. This being true, we are driven to the conclusion that if no oil escaped from defendant's pipe line since October, 1921, the date of the first trial, then at the time of the filing of the second petition, August 13, 1925, the damages would be negligible and the trace of oil practically eliminated.

In the classification of nuisances, we find temporary nuisances and permanent nuisances. The solution of this case depends entirely upon the question as to which of the two classes mentioned the injury complained of by plaintiffs properly belongs. It is sometimes difficult to determine whether a nuisance be classified as permanent or temporary. In Corpus Juris, volume 46, page 650, we find the following: "A temporary nuisance, as distinguished from a permanent one, may be said to be one which can be abated. A permanent nuisance is one of such a character and existing under such circumstances that it will be presumed to continue indefinitely."

In order for a nuisance to be permanent, it is usually necessary that the nuisance be created by the inherent character of a structure or business and that its lawful and necessary operation creates a permanent injury. Where, however, the structure or character of the business, when properly conducted and operated, does not constitute a nuisance, but only becomes such through negligence, then the nuisance or injury is temporary and abatable. It must be remembered that we are now speaking only of such structures or business operations as are not inherently unlawful. The following have been classified as permanent nuisances: Undertaking establishments or funeral parlors in residential sections of cities, Street v. Marshall, 316 Mo. 698, and cases therein cited; railroad embankments, unless changed by statute, Hayes v. Railroad, 177 Mo. App. 201, and cases cited; sanitary sewers, Smith v. Sedalia, 182 Mo. 1; incinerating plants, where the injury arises solely from the negligent operation thereof, Keene v. City of Huntington, 92 S. E. (W. Va.) 119-124.

The following have been declared to be temporary, abatable nuisances: Negligently maintaining a poultry and egg establishment, so as to create a nuisance. McCracken v. Swift & Company, 212 Mo. App. 558, 250 S. W. 953, same case in Supreme Court, 265 S. W. 91; negligent operation of a creosoting plant, permitting poisonous fluids to escape and flow on plaintiff's farm, Chapman v. American Creosoting Co., 220 Mo. App. 419, 286 S. W. 837, l. c. 840; building and maintaining a dam in a river so as to change the flow of water to plaintiff's injury, Pinney v. Berry, 61 Mo. 359; the negligent operation of a roofing plant, permitting oil and noxious fluids to escape and flow into a stream, thereby rendering the stream useless for boating purposes, Bollinger v. American Asphalt Roof Corporation, 19 S. W. (2d) 544. For other authorities

supporting the above cases, see Words and Phrases, "Temporary Nuisances" and "Permanent Nuisances." In analyzing these cases we find that the courts, generally speaking, classify only those nuisances as permanent where the lawful operation of the business itself or the structure creates a permanent injury. In Street v. Marshall, supra, this Court en Banc held that the funeral parlor in question, though lawfully, carefully and skillfully conducted, created a nuisance when located in a strictly residential neighborhood. The cases that classify sanitary sewers as permanent nuisances do so on the theory that it is essential to the operation of a sewer that it discharge its sewage into some stream or drain and therefore the nuisance is presumed to continue so long as the sewer remains. We are not including in this discussion that class of nuisances where a single tortious act of defendant causes a permanent injury for which there can be but one recovery.

All of the cases cited above holding the injury or nuisance to be temporary are cases wherein the courts hold that the negligent acts of the defendant caused the injury and nuisance. Applying these rules and distinctions to the present case, how are we to classify the alleged nuisance in question? A pipe line for the transportation of oil is not necessarily a nuisance. [46 C. J. 717.] A leak in an oil pipe line is not essential to its use. In fact, it is not desired. It should, under no circumstances, be permanent. Common sense and experience teach us that the company, as a matter of economy, should and will repair the line immediately upon discovering the leak. It is negligence to permit oil to escape from a pipe line, especially after notice thereof, causing damage to surrounding territory. The injury, according to the evidence, is not permanent. We rule, therefore, that the injury and nuisance complained of should be classified as a temporary, abatable nuisance.

Having thus classified the injury, let us analyze the opinion of the Court of Appeals to determine whether the rules of law there announced, on the point in question, apply to the case at hand. Judge BRADLEY, in the majority opinion, said:

"The trial at which the former judgment was rendered was on October 4, 1921. An instruction given on behalf of plaintiffs in that trial designated the date of the trial as the limit of the damage period, but such fact is not of consequence upon the question of *res adjudicata*. If plaintiffs' cause in the former suit was for permanent damages for the deprivation of their 'right to the comfortable enjoyment and use of their said land as a home,' as alleged in the petition in the former suit, then the instruction given could not and would not alter the character of the cause of action, as one for permanent damages, although it was prejudicial to plaintiffs. [Stodghill v. Railroad, 53 Iowa, 341, 5 N. W. 495, 498; 2 Freeman on Judgments

(5 Ed.), sec. 727.] The general rule is that a party, who inadvertently, or by his own negligence or mistake, and without fault or fraud of the adverse party, sues for and recovers only a part of his claim, is estopped to bring a second action for the residue. [34 C. J. 836; Wickersham v. Whedon, 33 Mo. 561.] . . .

"The general rule is that all issues which could properly have been disposed of on their merits in a former suit between the same parties and their privies are considered as having been settled, though said issues may not in fact have been litigated or determined. [Runnells v. Lasswell (Mo. App.), 272 S. W. 1032; Berry v. Majestic Milling Co. (Mo. App.), 240 S. W. 829; Id., 304 Mo. 292, 263 S. W. 406.]

"As above stated, plaintiffs in the cause at bar are proceeding on the theory that defendant repaired its pipe line after the first trial and that after the repair their water supply was not affected for about six months. When the evidence in this record is analyzed it is apparent that there was no evidence of repair on the pipe line through plaintiffs' farm. Thus the conclusion is inevitable that whatever negligence, as affects the maintenance of its pipe line across plaintiffs' farm, may be attributed to defendant, existed when the former suit was filed, and for this negligence plaintiffs have had redress."

Judge Bailey, in his concurring opinion, makes the following statement:

"Plaintiffs having pleaded permanent damages in the former case and the proof showing a continuing damage beyond the date of trial, they should have attempted to collect their full damage at that time.

"I do not believe they have a legal right to collect their damages in piecemeal. Having elected to limit their damages to the date of trial in the former suit, it is my opinion they are barred from further recovery in the absence of proof that a new and independent leak caused the subsequent damage. I therefore concur in the original opinion on the authorities there cited."

Judge Cox in his dissenting opinion, at pages 122 and 123 said:

"I think the judgment in this case should be reversed, but I also think that the reversal should be placed upon the ground of a failure of proof and not upon the ground of *res adjudicata* resting upon the similarity of the petitions in the two suits. There does not appear to me to be any substantial evidence that a new leak has occurred since the filing of the petition in the former suit, and without evidence of that character no case was made for the jury."

The above statements of law taken from the opinions of the learned judges of the Springfield Court of Appeals are correct, except that they apply to permanent nuisances and not to temporary and abatable nuisances. A plaintiff may not treat a temporary injury as permanent and recover damages on the theory that the temporary, abatable nuisance will continue. It would be reversible error for

the trial court to submit to the jury an instruction on permanent damages where the evidence shows the injury to be only temporary, even though plaintiff pleaded and asked for permanent damages. This law is well established in this and other states. [Pinney v. Berry, 61 Mo. 359; Foncannon v. City of Kirksville, 88 Mo. App. 279, 284; Van Hoozier v. Railroad, 70 Mo. 145, 148; Smith v. Railroad, 98 Mo. 20, 25; Frederick v. City of Joplin (Mo. App.), 201 S. W. 1147, 1149; McCracken v. Swift, 212 Mo. App. 558, 250 S. W. 953; Hayes v. Railroad, 177 Mo. App. 201, 162 S. W. 266; Chapman v. American Creosoting Co., 220 Mo. App. 419, 286 S. W. 837, 841; Bollinger v. American Asphalt Roof Corp., 19 S. W. (2d) 544; Blankenship v. Kansas Explorations (Mo. Sup.), 30 S. W. (2d) 471, 479; Chesapeake & O. Ry. v. Coleman (Ky.), 210 S. W. 947; City of Austin v. Bush (Tex.), 260 S. W. 300; Harvey v. Mason City, etc., Ry. Co., 105 N. W. (Iowa), 958; Norfolk & W. Ry. Co. v. Allen (Va.), 87 S. E. 1. c. 559; 46 C. J. 826, also pp. 828, 829, and cases cited under note 20; 34 C. J. 842, sec. 1251, note 36.]

In Blankenship v. Kansas Explorations, supra, a very recent case, this court held it was error to permit plaintiff to recover permanent damages, absent a showing that the cost of removing the nuisance was equal to or greater than the difference in the value of plaintiff's property before and after the infliction of the injury.

The question now is, what damages could plaintiffs have recovered in the first suit that would operate as a bar to any further action? To this we answer, the damages that had accrued up to the date of the filing of the petition and all future damages that would reasonably follow as a result of the oil that had escaped from defendant's pipe line, by reason of defendant's negligence to the date of the filing of the suit. If, after the filing of the first suit, oil escaped by reason of the negligence of the defendant to plaintiffs' damage, a new cause of action would arise and plaintiffs could recover in a subsequent action and it is immaterial whether the oil escaping after the filing of the first petition was a continuation of the old or a new and independent leak. [34 C. J. 842, sec. 1151, and cases cited under note 37; also authorities, supra.]

The reason for this rule is as follows: A plaintiff should not be permitted to recover future damages that may never be sustained. A defendant should not be required to pay for a permanent injury on the theory that he will continue to illegally inflict injury upon plaintiff. The rule is well stated in 4 Sutherland on Damages (3 Ed.) 3034, quoted in Norfolk & W. Ry. Co. v. Allen, 87 S. E. 1. c. 561:

"In all cases of doubt respecting the permanency of the injury the courts are inclined to favor the right to bring successive actions. Otherwise, the effect would be to give the defendant, because of his wrongful act, the right to continue the wrong; a right equiva-

lent to an easement. A right to land cannot be thus acquired. On the other hand, such a principle would involve the injustice of compelling the defendant to pay for a perpetual wrong, which he would perhaps put an end to at once on the adjudication that the erection is a nuisance.''

Again, a party should not by his negligent acts be permitted to continuously injure his neighbor; if so, he must respond in successive actions for damages. As was said in Harvey v. Mason City, etc., Railroad Co., 105 N. W. 1. c. 961:

''The principle upon which a party creating a continuing nuisance is held liable to successive actions for damages is that he had a legal right and is under legal obligation to remove, change, or repair the structure or thing complained of, and thereby terminate the injury to his neighbor; and, failing so to do, each day's continuance of the nuisance is a repetition of the original wrong, and a new action will lie therefor.''

We therefore hold that in so far as the majority opinion considered and treated as permanent the injury complained of and that plaintiff could recover permanent damages, the opinion is erroneous, particularly that part which reads:

''As above stated, plaintiffs in the cause at bar are proceeding on the theory that defendant repaired its pipe line after the first trial and that after the repair their water supply was not affected for about six months. When the evidence in this record is analyzed it is apparent that there was no evidence of repair on the pipe line through plaintiffs' farm. Thus the conclusion is inevitable that whatever negligence, as affects the maintenance of its pipe line across plaintiffs' farm, may be attributed to defendant, existed when the former suit was filed, and for this negligence plaintiffs have had redress.''

Part of the concurring opinion of BAILEY, J., seems to support the above theory, where he says in the last paragraph that plaintiffs ''are barred from further recovery in the absence of proof that a new and independent leak caused the subsequent damage.'' Also the latter part of the next to the last paragraph of the dissenting opinion of Cox, P. J., which reads: ''There does not appear to me to be any substantial evidence that a new leak has occurred since the filing of the petition in the former suit, and without evidence of that character no case was made for the jury.''

If, by that language, the learned judges mean to say that the continuation of the old leak beyond the date of the filing of the first petition did not create a new cause of action, they are in error, for the reason that if defendant did not repair the pipe line and oil continued to escape to plaintiffs' damage, by reason of the negligence of the defendant, then a new cause of action accrued and plaintiffs are entitled to file successive actions for damages so long

as they occurred within the period of the Statute of Limitations. [Cases and authorities cited, supra.]

The plea of *res judicata* is therefore ruled against the defendant.

Defendant also contends that there is no substantial evidence in the record tending to show that plaintiffs' water supply was contaminated by oil from defendant's pipe line. In order for plaintiffs to recover in the second suit, the evidence and circumstances must prove that their water supply was contaminated by oil escaping from defendant's pipe line since January 1, 1922.

Plaintiff E. E. Shelley testified, in part, that shortly after the first trial the pipe line of defendant was stripped, that is, the earth was removed and the pipe exposed. There was evidence of oil in the trench at the public road near plaintiffs' farm. Thereafter plaintiff did not notice any oil in the water for about six months. In May, 1922, plaintiff noticed oil at a new place about 125 yards northwest of the road; that the oil appeared after every rain and witness noticed it fifteen or twenty times at that place. Oil then began to appear in the spring and well and contaminated the water, especially after rains. Plaintiff and members of his family, on numerous occasions, carried water for cooking and drinking purposes. The water was obtained from the neighbors. Calves on plaintiffs' farm drank contaminated water from the spring and it scoured them. Plaintiff was cross-examined with reference to his testimony in the first suit. He also testified on cross-examination that he saw evidence of oil in the water and on the leaves as late as October, 1925. It had not rained much from that date to the time of the trial. There was no other source of oil in the neighborhood, other than defendant's pipe line. Other witnesses testified that they smelled oil and noticed a rainbow effect or coloring in the water and saw other evidences of crude oil on plaintiffs' farm and in the water at various times during the years 1922 to 1925, inclusive. Witness Haney testified that in the early part of 1923 he noticed oil near the spring; "that you couldn't walk across without getting that black oil on your shoes." And again in 1925 "there was a little oil there; not much like there was before, just a small amount . . . running out of the wet-weather spring. . . . I put my fingers in it and rubbed them together. I have handled oil, used machine oil. . . . It was black oil, looked like crude oil."

Defendant offered a number of witnesses. Their testimony contradicted that of plaintiffs' witnesses. J. S. Endicott testified on behalf of defendant that after the first trial, during the year 1921, they repaired the pipe line right east of the Shelley place, across the road from the Shelley farm. In 1923, the line was repaired about one-half mile from the Shelley place. In 1921, the pipe line on the Shelley place was stripped, leaving the trench open for three

days; also numerous test holes were dug to locate a leak, but no evidence of escaping oil. was found. No repairs were made on the Shelley farm since 1921. Defendant also offered evidence that the oil escaping on the Earnest place, where it was repaired in 1921, was lower than the spring and water supply of plaintiffs and therefore the oil could not drain to the Shelley farm. A number of witnesses testified for defendant that they had examined the plaintiffs' farm and water supply prior to and about the time of the trial and failed to find any evidence of oil. Witnesses found a brown or yellow substance or discoloration on the rocks at the branch and other places which, in the opinion of the witnesses, was iron rust.

D. S. Libby, professor in the geology department at Drury College, Springfield, Missouri, testified that he had specialized in such work and was familiar with the effect of crude oil where saturated in the soil and on vegetation; that traces of crude oil would remain in the soil for about three years. Witness examined samples of water from plaintiffs' spring and well, applied the usual test and found no evidence of crude oil. Neither could witness detect an odor indicating its presence. Witness also examined rock taken from plaintiffs' branch and found a sediment of iron, but no oil.

Wilson F. Monfort, an expert in chemistry with much experience. testified that he examined samples of water from plaintiffs' water supply at various times between August 28th and November 10, 1925, and failed to find any trace of oil. Witness also examined soil taken from the spring chamber and the samples bore no evidence of crude oil.

We are much impressed with the evidence of the defendant on the merits of the case. Since, however, the record contains substantial evidence from which the jury could find that oil had escaped from defendant's pipe line after January, 1922, and contaminated the water on plaintiffs' land, we must defer to the finding of the jury. The defendant asked and the court properly instructed the jury as follows:

"The court instructs the jury that plaintiffs allege in their petition that defendant continuously since the 1st day of January, 1922, have so carelessly and negligently maintained said pipe line so as to permit large quantities of crude oil, petroleum and petroleum products to escape from said pipe line and to permeate and saturate the ground on plaintiffs' land, and has entered plaintiffs' well and poisoned and contaminated the waters therein to such an extent that it is unfit for use, and that plaintiffs' well is thereby rendered worthless, and that the stream or branch on the north side of plaintiffs' premises has been poisoned and contaminated by oil escaping from defendant's pipe line, and that plaintiffs are deprived of the natural supply of water on their farm.

"The court instructs the jury that plaintiffs are not entitled to recover unless you believe and find from the evidence that:

"First. Oil from defendant's pipe line has escaped since January 1, 1922, and on plaintiffs' farm.

"Second. The escape of said oil was occasioned and caused by reason of the negligent and careless maintenance of said pipe line by defendant.

"Third. Said oil so escaping since January 1, 1922, occasioned and caused whatever loss or damage, if any, plaintiffs have sustained since January 1, 1922.

"And the court further instructs the jury that the burden is upon plaintiffs to prove each of the above allegations by the preponderance or greater weight of the evidence, and in the event you believe and find from the evidence that plaintiffs have failed to sustain said burden as to all or any one of the above-mentioned items, to-wit, first, second and third, that then, and in that event, plaintiffs are not entitled to recover, and you will find your verdict for the defendant."

The trial court heard and saw the witnesses and is in a much better position to judge the weight of the evidence than this court. The trial court is authorized to sustain a motion for new trial, if, in its judgment, the verdict is against the weight of the evidence. The court in this case exercising its discretion ordered a *remittitur* of $1,000 and entered judgment for the balance of $1500, indicating that in its judgment the evidence justified a verdict for plaintiff for a substantial amount.

Finding no reversible error, the judgment of the circuit court is affirmed. *Davis, C.,* not sitting; *Cooley, C.,* concurs.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.