245 P.2d 255

**CITY OF TUCSON v. APACHE
MOTORS et al.**

No. 5526.

Supreme Court of Arizona.

June 9, 1952.

Udall & Udall, of Tucson, for appellant.

Darnell, Robertson & Holesapple, Knapp, Boyle, Bilby & Thompson, of Tucson, for appellees.

PHELPS, Justice.

This is a case in which a number of persons joined as parties plaintiff in an action against the city of Tucson to recover damages alleged to have been sustained by them as a result of water being cast upon their premises due to the closing of an adjacent arroyo and negligently failing to construct openings or conduits of sufficient size to adequately carry away the water which they say would otherwise have flowed unobstructed down through the arroyo. Judgment was rendered in favor of plaintiffs from which this appeal is prosecuted.

The city of Tucson did the construction work of which complaint is made, between February 1925 and February 1931. It undertook to make the improvements upon the written petitions of the property owners along the arroyo, some of whom are plaintiffs in the instant case.

The arroyo in question runs in a northwesterly direction in down town Tucson and drains a watershed of approximately 21 square miles lying in a southeasterly direction from the area alleged to have been affected by such surface flood waters. These floods occur intermittently and only when the rainfall is heavy in all or part of the above mentioned watershed. The first flood occurred in 1933. Repetitions thereof occurred in 1935, 1937, 1939, 1940, 1943 and again in 1948, the latter being the subject of this litigation.

In 1940 after suits had been filed the city made settlements with most of these plaintiffs who were then owners of the property now involved and which was flooded at that

time. After the 1943 flood, actions were brought by a number of property owners including most of the plaintiffs in the instant case based upon the negligence of the city in failing to provide adequate openings to contain and carry away the flood waters flowing down the arroyo without damage to the plaintiffs. The plaintiffs prevailed in those actions and the judgments of the trial court were affirmed by this court in the cases of City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 P.2d 245; City of Tucson v. Apache Motors Co., 64 Ariz. 251, 168 P.2d 253. The outlets provided by the city to carry the water away consisted of two concrete culverts 10 x 10 feet which were laid in the bed of the arroyo or on a level therewith.

The arroyo has a large swale or lower area on both sides of the actual stream bed arising gradually to slightly higher land. The evidence does not disclose just how wide the swale is but the property of plaintiffs is situated in the immediate vicinity of the stream bed and within the adjacent swale area. The culverts have been covered and buildings have been erected over them by some of the plaintiffs.

The city has presented a number of assignments of error for our consideration, the first of which is that the court erred in entering judgment for plaintiffs and in denying its motion for judgment notwithstanding the verdict. This assignment of error is based upon the proposition of law that the construction of the culverts in question was permanent in character and therefore constituted a permanent nuisance. This being true, the city claims that plaintiffs had but one cause of action against the city which they exercised in 1943. Plaintiffs, on the other hand, claim that they have a new cause of action for each successive injury sustained.

We believe the general rule to be that if a nuisance falls within the definition of a permanent nuisance ordinarily the cause of action arises immediately upon the creation of the nuisance and all damages past, present and future, must be recovered in one cause of action and that the measure of damages to the realty is the difference between the market value of the premises immediately before and its market value immediately after the completion of the structure creating the nuisance. This is not always the rule, however, as will be here-. inafter shown. On the other hand if the nuisance is temporary or continuing, a cause of action arises upon the occurrence of each successive injury sustained. Much confusion has arisen in the various jurisdictions of the United States as to just what constitutes a permanent nuisance as distinguished from a temporary or continuing nuisance so as to entitle the injured person to recover all damages sustained in one cause of action and what elements must concur to start the statute of limitations to running against the injured party. Perhaps it might be more accurate to say that the confusion arises more from an application

of the facts in each case to the rule of law defining a permanent nuisance.

We said in City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30, 35, that:

" * * * if a nuisance is of such a nature that although the thing itself may continue, yet its injury to another may be abated by human agency, and the owner or perpetrator of the nuisance fails to abate it, the nuisance is a continuing one, and one action does not exhaust the remedies of the parties injured. If, however, the thing is of such a character that it cannot be maintained without continuing to be, in the legal sense, a nuisance, it is permanent in its nature, and the rights of the injured party are exhausted by one action."

The court said in Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 95 S.W.2d 1, at page 4 thereof, that:

" * * * it is essential to ascertain and decide whether the nuisance complained of was of a permanent or temporary character. If it be permanent, usually it is necessary that it be created by the inherent character of the structure or business, and that its lawful and necessary operation creates a permanent injury; but where the structure or the business when properly conducted and operated does not constitute a nuisance and only becomes such through negligence, it is temporary. (Citing cases.) * * *"

The court continuing said:

" * * * If the structure is in character relatively enduring and not likely to be abated, either voluntarily or by an order of court, it is generally held that the nuisance is a permanent one; and if the prospective damages resulting therefrom can be estimated with reasonable certainty, the diminution of the value of the property is immediately recoverable as damages. (Citing cases.)"

In Shelley v. Ozark Pipe Line Corporation, 327 Mo. 238, 37 S.W.2d 518, 519, 75 A.L.R. 1316, based upon the construction of an oil pipe line from which it was charged oil was leaking, in defining temporary and permanent nuisance the court said:

"In order for a nuisance to be permanent, it is usually necessary that the nuisance be created by the inherent character of a structure or business and that its lawful and necessary operation creates a permanent injury. Where, however, the structure or character of the business, when properly conducted and operated, does not constitute a nuisance, but only becomes such through negligence, then the nuisance or injury is temporary and abatable. * * *"

In Pahlka v. Chicago, R. I. & P. R. Co., 62 Okl. 223, 161 P. 544, the court said at

page 550 in stating what is not a permanent nuisance:

"'When a cause of injury is abatable, either by an expenditure of labor or money, it will not be held permanent.' (Citing cases.)"

The court then said in explanation of that statement:

"It may be said that, in its exact expression, this rule bears a contradiction, in that every human edifice might be altered by the expenditure of labor or money, and that therefore, under the strict letter of the rule, no artificial improvement could be permanent. However, the spirit of the rule contemplated an extension of its effect, not expressly stated in the former decisions of this court. Giving it such an express extension, the rule would be that a negligent condition in an artificial structure, permanent in its nature, will not be held permanent if such negligent condition is abatable by an expenditure of either labor or money and such abatement is consistent with the rightful use and maintenance of the structure."

■■ Where the nuisance is temporary or continuing the cause of action arises and the statutes of limitation begin to run from the successive dates upon which the injury occurred. On the other hand, although the nuisance may meet the requirements of the usual definition of a permanent nuisance in that the structure or business is permanent in nature, that it is lawfully constructed by a corporation having the power of eminent domain and that its operation therefore may not be abated through court action and that its operation will result in some damage it is held in the majority of jurisdictions that if the injury is not contemporaneous with the completion of the structure or if it cannot be said with certainty that damages will flow therefrom, or if its nature and extent cannot be reasonably ascertained or estimated; or stating it in another way, if it is known merely that damage is probable or that even though some damage is certain but that its nature and extent cannot be reasonably known or fairly estimated but is merely speculative or conjectural then the damage is not original, and the cause of action, in such event, arises and the statute of limitations begins to run upon the occurrence of each injury. Chicago R. I. & P. Ry. Co. v. Humphreys, 107 Ark. 330, 155 S.W. 127, L.R.A. 1916E, 962; Murduck v. City of Blackwell, 198 Okl. 171, 176 P.2d 1002; Missouri Pac. R. Co. v. Davis, 186 Ark. 401, 53 S.W.2d 851.

In the case of Pahlka v. Chicago R. I. & P. R. Co., supra, the court said:

"Regardless of the question of the permanence of the improvements, the right of action for injuries does not necessarily accrue at the time of the construction of the improvement. In cases of injuries resulting from permanent improvements, as to the time

when the right of action arises, the distinction seems to be that, where the injury is the natural result of the erection of the permanent improvement, or may be regarded as obviously consequential, the cause of action arises at the time of the construction of the improvement; but that, where the injury is not such natural result, or not obviously consequential, the right of action arises at the time of the actual injury. The line of cleavage seems to lie in the certainty or uncertainty of the injurious result."

That court then quotes with approval the following from Gulf C. & S. F. Ry. Co. v. Moseley, 161 F. 72, 88 C.C.A. 236, 20 L. R.A.,N.S., 885:

" 'It is to be conceded that there is much conflict in the decisions of courts touching the application of the statute of limitations to nuisances of this character. This conflict has arisen especially in reference to the erection of railroad embankments across creeks and swales, *draining large areas of adjacent land without sufficient ditches or culverts to carry off the waters on occasions of freshets,* whereby the land becomes flooded by overflows, damaging annual crops, and the like. In such case there is not infrequently present elements of uncertainty, such as the insufficiency of the openings in the embankments, which, the presumption may be indulged, the railroad might at any time in the future sufficiently enlarge, rather than submit in the first action to the recovery of all the consequential damages. In the second place, where the damage is to crops, it may depend entirely upon the possibility of the nonrecurrence of the overrunning flood in any given year, or the contingency of no crop being planted thereon, or being cultivated in a product subject to little damage from a temporary overflow. Such are not the conditions of the nuisance in question.' "

Where the damages are not predictable, no cause of action arises until the injury is sustained. Atchison T. & S. F. R. Co. v. Hadley, 168 Okl. 588, 35 P.2d 463; Chesapeake & O. Ry. Co. v. Robbins, 154 Ky. 387, 157 S.W. 903.

In the instant case it was not known at the time of their completion in 1931 that the culverts involved in this litigation were inadequate to carry away the flood waters draining into the arroyo in question. This fact was *not known for some time* thereafter. Although small floods came down the arroyo after rains on the watershed no appreciable damage to property along the arroyo occurred until 1940. The next flood occurred in 1943 causing damage to property owners along the arroyo for which recovery was had in the courts. No further damage occurred until 1948 which forms the basis of this litigation. Therefore it could *not have been reasonably ascertained or es-*

timated at the time of the completion of the culverts or at the time of the intermittent floods the damages which may reasonably be expected to result to plaintiffs as a consequence thereof, nor could it then be said how frequently the floods will recur. The frequency or infrequency of such recurrence constitutes an uncertainty which would have considerable bearing upon the ability to reasonably estimate the amount of damage to the property involved.

It was said in Rosenthal v. Taylor B. & H. Ry. Co., 79 Tex. 325, 15 S.W. 268, 269, that:

"* * * The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed; but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once."

A number of jurisdictions announce the rule that the plaintiffs, in action of this character, may elect to recover in one cause of action or in successive causes of action. We are not inclined to adopt this view.

In some jurisdictions including Illinois, Kentucky, Kansas, Georgia, Missouri, Nebraska, Texas and Virginia a distinction is made between a permanent improvement properly constructed and one negligently built. These courts allow successive recoveries following each injury where the improvement is negligently constructed upon the theory that where a structure is built even under legislative authority, and damages result from negligent or imperfect construction the party injured is not bound to assume that the imperfect structure will be permanent and he may therefore bring successive actions for resulting damages until the defective construction is corrected. In such cases the cause of action arises and the statute of limitations begins to run from the date of the injury. Bernhardt v. B. & O. Southwestern R. R. Co., 165 Ill. App. 408; City of Covington v. McKinney, 263 Ky. 131, 92 S.W.2d 1. We believe this to be sound and adopt it as a rule of law in this jurisdiction.

We said in the case of City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 P.2d 245, 252, that:

"* * * The testimony shows that the damages sustained were the result of the faulty construction of the tunnel in the bed of the arroyo; that the same was of insufficient size to carry the water; that often by reason of rainfalls coming down the arroyo

not only was the tunnel improperly constructed to care for same, but it was entirely too small to carry the natural flow."

■ This constitutes a judicial finding of fact that the culverts in question were negligently constructed in that they were too small to carry away the flood waters which naturally flowed down the arroyo as the result of occasional rainfalls upon the watershed drained by said arroyo. It is therefore res judicata as to that fact.

■ It requires no citation of authorities to sustain the proposition that although no legal duty devolved upon the city of Tucson to construct the culverts here involved but having undertaken to do so, it was required under the law to build culverts of sufficient size to adequately carry away all water accustomed to flow, or which may reasonably be anticipated to flow down such arroyo as a result of rains upon the watershed which it drained. Having failed to do this it was, in law, guilty of negligence as decided by this court in the O'Rielly case, supra.

■ Because of the negligence of the City in failing to construct culverts of sufficient capacity to carry away such flood waters and because of the further fact that the damage to plaintiffs resulting from the inadequate capacity of such culverts could not be reasonably calculated or even approximately estimated at the time of the completion of the construction thereof or at any time subsequent thereto, and because of the impossibility of predicting the frequency of these recurrent floods, we hold that a new cause of action arises upon the occurrence of each successive injury and the statute of limitations begins to run from that date.

This holding necessarily negatives the contention of the City that it was error for the court to strike its defense to the effect that the damage caused by the structure in question was original, that the cause of action arose contemporaneously with the completion of the structure; that all damages past, present and future, were recoverable in that cause of action and that consequently it is barred by the statute of limitations. It was therefore not error for the court to strike this defense.

We think this case is clearly distinguishable from the case of Clausen v. Salt River Valley Water Users' Ass'n, 59 Ariz. 71, 123 P.2d 172. In that case the south bank of the Arizona Canal was lowered by the Water Users for the express purpose of diverting the waters of the canal when it reached a certain height to and over Clausen's property. In the instant case the structure built was not to divert the waters of the arroyo from its natural course but to efficiently carry them away along the bed of the arroyo. There was no negligence in the construction in lowering the bank of the canal. The court there held that the nuisance was permanent and the damage

original and capable of ascertainment at the time the canal bank was lowered.

The case of Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford, 69 Ariz. 1, 206 P.2d 1168, is based upon the doctrine of inverse eminent domain. No negligence in construction was involved. The waters were intentionally diverted from the natural course to and upon plaintiff's land. No questions raised here were even suggested in that case except as to the measure of damages.

▇▇▇▇▇ Appellant complains of the admission in evidence of the opinion of this court in the O'Rielly case, supra. We find no record in any of the books where a decision of the supreme court was ever offered or received in evidence and believe its admission would have been erroneous except for the stipulation of counsel that it might be so received. However, in view of our holding that the decision in the O'Rielly case is res judicata as to the fact of the negligent construction of the culverts, we believe even in the absence of stipulation it would not constitute reversible error.

▇▇▇▇ The City complains of the court's action in striking its defense to the effect that it was the duty of plaintiffs to take steps to mitigate their damages under the circumstances. The authorities are also divided on this question as they are on all other questions relating to permanent and temporary nuisances. However, the question was directly ruled upon by this court in the case of United Verde Extension Mining Co. v. Ralston, 37 Ariz. 554, 296 P. 262, 265, wherein the court said with reference thereto that:

> "* * * This rule (the duty to mitigate damages) has no application where the injury can be prevented only by extraordinary cost or effort, or not at all, *or in cases of nuisance or of positive and continuous torts.* * * *" (Emphasis supplied.)

The court quoted with approval from Wood on Nuisances to the effect that even if the injured person might have prevented the injury by small expenditure, recovery is not precluded thereby.

▇▇▇▇ This leaves but one further question to be resolved: Did the court have the authority to grant plaintiffs' motion for judgment notwithstanding the verdict in favor of plaintiffs Guiffre, Christmann, Fitchett, Home Ice Company and Tucson Auto Parts? The jury returned verdicts in favor of these plaintiffs which were not supported by the evidence. These plaintiffs moved for judgment n. o. v. The court granted the motion. The judgment granted was in accordance with the uncontradicted evidence in the case. It is true as we have said in a number of cases that the court or jury is not bound by the uncontradicted evidence of an interested party. This court has never held, however, that the trial court may not predicate its judgment upon such testimony. The rule is that the judge

or jury, being the sole judges of the facts and the credibility of witnesses, may or may not believe an interested party. Certainly the jury was not authorized to return verdicts which had no evidence to support them. It either believed the plaintiffs or it disbelieved them. It was bound to return verdicts in the amounts the evidence showed to be due them or it was bound to return a verdict for the defendant. It may not select an arbitrary amount without rhyme or reason. Such a practice would sacrifice justice upon the altar of whim and caprice. Perhaps the proper course for the court to pursue under such circumstances would have been to decline to accept the verdicts and require the jury to return verdicts which were supported by the evidence. "When a verdict cannot be justified upon any hypothesis presented by the evidence, it will not be allowed to stand. * * *" Earley v. Johnson, 58 Okl. 466, 160 P. 482. We do not believe the error, if any, would justify a reversal of the case. If counsel for plaintiffs had moved for instructed verdicts in favor of these particular plaintiffs at the close of all of the evidence the court would have had the authority to grant it inasmuch as the evidence relating to the amount of damages they each sustained was not contradicted in any manner.

Judgment affirmed.

STANFORD, DE CONCINI, and LA PRADE, JJ., and FAIRES, Superior Court Judge, concur.

UDALL, C. J., having disqualified, C. C. FAIRES, Superior Court Judge, of Gila County, was called to sit in his stead.