367 P.3d 72

**Lee WATKINS, an individual, Plaintiff/Appellant,**

v.

**Sheriff Joseph M. ARPAIO, in his individual and official capacities as Sheriff of Maricopa County, Defendant/Appellee.**

No. 1 CA–CV 14–0707.

Court of Appeals of Arizona, Division 1.

Feb. 2, 2016.

should be reversed.

Robbins & Curtin, PLLC By Joel B. Robbins, Anne E. Findling, Phoenix, Counsel for Plaintiff/Appellant.

Sacks Tierney, PA By James W. Armstrong, Jeffrey S. Leonard, Scottsdale, Counsel for Defendant/Appellee.

Presiding Judge DIANE M. JOHNSEN delivered the opinion of the Court, in which Judge KENT E. CATTANI and Judge JOHN C. GEMMILL joined.

## OPINION

JOHNSEN, Judge:

¶ 1 Lee Watkins argues the superior court erred by dismissing on limitations grounds his claims against Maricopa County Sheriff Joe Arpaio for intentional infliction of emotional distress and false-light invasion of privacy. He argues the torts were "continuing wrongs" that did not finally accrue until less than a year before he filed his complaint. We hold that, under the circumstances, the statutes governing accrual and limitations of a claim against a public employee preclude application of the "continuing wrong" doctrine to save either of Watkins's claims.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Watkins is the founder and owner of Cactus Towing, which did business in Maricopa County for more than 15 years. Watkins supported a political opponent of Arpaio in the 2004 election and alleged that, under Arpaio's direction, the Sheriff's Office sought to punish him and his company by launching a groundless "sweeping investigation" of them in March 2005. Deputies seized the company's computers, business records, banking accounts, cash and trucks. At the same time, according to the complaint, the Sheriff's Office "orchestrated a media circus" to announce the false charges against him, triggering a "media festival [that] had no law enforcement purpose but was designed to cause injury to its victims without any due process." According to the complaint, "For years Sheriff Arpaio continued to make statements that the investigation was ongoing," until, in October 2010, the Maricopa County Attorney "finally concluded the investigation by declaring that there was nothing that could be prosecuted against Mr. Watkins."

¶ 3 Watkins sued Arpaio and Maricopa County in September 2011, alleging abuse of process, intentional interference with contractual and economic relationships, intentional infliction of emotional distress, and false-light invasion of privacy, all premised on the alleged politically motivated investigation. The superior court dismissed all of the claims, finding them barred by the one-year statute of limitations in Arizona Revised Statutes ("A.R.S.") section 12–821 (2016).[1]

¶ 4 On appeal, this court affirmed the dismissal of the intentional-interference claim but reversed dismissal of the claims alleging false-light invasion of privacy and intentional infliction of emotional distress.[2] We held those claims were not barred by the one-year limitations period because the complaint alleged Arpaio made public statements accusing Watkins of criminal wrongdoing after the county attorney announced in October 2010 that he was dropping the investigation.

¶ 5 On remand, Arpaio moved for summary judgment, arguing no evidence supported the allegation that he made any public statements about Watkins after the investigation was dropped. The superior court granted Watkins's request for additional discovery pursuant to Arizona Rule of Civil Procedure 56(f). In due course, the court granted summary judgment in Arpaio's favor, dismissing the two remaining claims.

¶ 6 Watkins timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2016) and –2101(A)(1) (2016).

## DISCUSSION

### A. Legal Principles.

 ¶ 7 We review a grant of summary judgment *de novo*. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App.2007). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). The moving party bears the burden of providing undisputed admissible evidence that would entitle it to judgment as a matter of law. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 18, 292 P.3d 195, 199 (App.2012). "We view the facts and any inferences drawn from those facts in the light most favorable to the party against whom judgment was entered." *Tierra Ranchos*, 216 Ariz. at 199, ¶ 15, 165 P.3d at 177. We review questions of law concerning statutes of limitations *de novo*. *Logerquist v. Danforth*, 188 Ariz. 16, 18, 932 P.2d 281, 283 (App.1996).

### B. Intentional Infliction of Emotional Distress.

 ¶ 8 A plaintiff suing for intentional infliction of emotional distress must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the

---

1. Absent material revision after the relevant date, we cite a statute's current version.

2. Watkins did not appeal the dismissal of his claims against Maricopa County or the dismissal of his abuse-of-process claim against Arpaio.

near-certainty that such distress would result. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). In the prior appeal, we held Watkins's complaint contained sufficient allegations to support a claim for intentional infliction of emotional distress. Watkins now urges us to hold that his intentional-infliction claim alleges a continuing wrong, such that the statute of limitations did not begin to run until the allegedly wrongful investigation concluded in October 2010.

¶ 9 Other courts have held that a tort claim based on a series of closely related wrongful acts may be treated as alleging a continuing wrong that accrues for limitations purposes not at the inception of the wrongdoing but upon its termination. *See* Kyle Graham, *The Continuing Violations Doctrine*, 43 Gonz. L. Rev. 271, 275 (2008) (doctrine "aggregates multiple allegedly wrongful acts, failures to act, or decisions such that the limitations period begins to run on this collected malfeasance only when the defendant ceases its improper conduct").

¶ 10 Although no Arizona appellate court has addressed the issue, courts in other jurisdictions have applied a "continuing wrong" theory to comparable claims for intentional infliction of emotional distress. For example, in *Mears v. Gulfstream Aerospace Corp.*, 225 Ga.App. 636, 484 S.E.2d 659, 662 (1997), a woman alleged her work supervisor subjected her to "constant abuse, stress, and harassment" over a period of years. The court explained that the "continuing tort" theory is particularly suited to some claims for intentional infliction of emotional distress:

> Claimants bear a heavy burden in establishing the type of extreme and outrageous

conduct necessary to sustain a claim for intentional infliction of emotional distress. In cases involving a series of acts allegedly producing emotional distress, one incident "might not, taken in isolation, rise to a level of conduct actionable under the law for emotional distress." Viewed cumulatively, however, that incident in combination with a claimed pattern of conduct may support the cause of action.

*Id.* at 664 (citations omitted). Under this reasoning, the limitations period on such a claim does not begin to run until the alleged tortious acts have ceased. *Id. Accord Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir.2001) ("continuing violation" allows "a plaintiff [to] reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct"); *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749, 755 (1993) (limitations on intentional infliction claim based on a series of acts "is only held in abeyance until the tortious acts cease"); *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 86–87 (2003); *Bustamento v. Tucker*, 607 So.2d 532, 538–39 (La.1992); *McCorkle v. McCorkle*, 811 So.2d 258, 263–64 (Miss.App.2001); *Shannon v. MTA Metro–North R.R.*, 269 A.D.2d 218, 704 N.Y.S.2d 208, 209 (2000).[3] Other courts have applied the "continuing wrong" doctrine to intentional-infliction claims that are based, as here, on alleged wrongful investigations. *See Alexander v. United States*, 721 F.3d 418 (7th Cir.2013); *Llerando–Phipps v. City of New York*, 390 F.Supp.2d 372 (S.D.N.Y.2005).[4]

---

**3.** In *Floyd v. Donahue*, 186 Ariz. 409, 923 P.2d 875 (App.1996), this court declined to apply a "continuing tort" theory to a woman's claim that she was repeatedly sexually assaulted by her father. There was no suggestion in that case that the plaintiff alleged a claim for intentional infliction of emotional distress based on the series of alleged wrongful acts.

**4.** A handful of Arizona cases have applied a different variety of the "continuing wrong" doctrine, under which a plaintiff is allowed to sue based on a wrongful act that occurred long ago, but only may recover damages suffered during the limitations period immediately preceding fil-

ing of the complaint. *See, e.g., City of Tucson v. Apache Motors*, 74 Ariz. 98, 104–06, 245 P.2d 255 (1952) (discussing nuisance claim as a continuing wrong); *Garcia v. Sumrall*, 58 Ariz. 526, 533, 121 P.2d 640 (1942) (continuing trespass); *cf. Mayer Unified Sch. Dist. v. Winkleman*, 219 Ariz. 562, 567, 201 P.3d 523, 528 (2009) (state's failure to demand compensation in exchange for easements did not constitute a continuing violation). By contrast, under the "continuing wrong" rule applied in the cases from other jurisdictions cited above, the plaintiff is allowed to recover damages incurred over the entire span of the wrongful acts.

¶ 11 The reasoning of these cases from other jurisdictions, which allow delayed accrual of an intentional-infliction claim that is based on a long series of acts, is not without merit. Watkins alleged Arpaio commenced a politically motivated investigation of him and his company in 2005 with great public fanfare by seizing his assets and business records. Although Watkins plainly knew of the allegedly outrageous acts by Arpaio at the outset of the investigation, by the nature of the thing, he was for the most part unaware of how the investigation was proceeding thereafter. Nevertheless, Watkins alleged that the continuing existence of the investigation until its announced conclusion in October 2010 caused him emotional distress.

¶ 12 Watkins's claim, however, is subject to Arizona statutes that expressly govern the accrual of "all actions" against a public entity or public employee. Under A.R.S. § 12–821, "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." In turn, A.R.S. § 12–821.01(B) (2016) states, "For the purposes of this section, a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." Under these two statutes,

> "[a] plaintiff need not know *all* the facts underlying a cause of action to trigger accrual. But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." Thus, "[t]he relevant inquiry is when did a plaintiff's 'knowledge, understanding, and acceptance in the aggregate provide [ ] sufficient facts to constitute a cause of action.' "

*Thompson v. Pima County*, 226 Ariz. 42, 46, ¶ 12, 243 P.3d 1024, 1028 (App.2010) (citations omitted).

¶ 13 Arpaio argues Watkins knew or reasonably should have known years before he filed suit that the alleged unfounded investigation caused him emotional distress. Because Watkins failed to sue within a year of when he realized he had been damaged, Arpaio contends, the claim is time-barred.

¶ 14 There is no doubt that Watkins knew at the outset of the investigation in 2005 of the facts at the heart of his claim and also knew he had suffered a considerable amount of resulting emotional distress. Under the circumstances and pursuant to § 12–821.01(B), his claim against Arpaio for intentional infliction of emotional distress accrued at or shortly after the commencement of the investigation, and needed to be filed within one year thereafter. At that point, Watkins could have alleged Arpaio had intentionally inflicted great emotional distress upon him by commencing, with great public fanfare, an unfounded, politically motivated and malicious investigation, and that such investigation was continuing.

¶ 15 Watkins, however, argues that each day of Arpaio's continuing investigation of him cumulatively caused him emotional distress. That is how some claims for intentional infliction of emotional distress are made out. *See, e.g., Ford,* 153 Ariz. at 39–41, 43, 734 P.2d at 581–83, 585 (intentional-infliction claim was supported by a series of acts spanning more than a year, during which defendant "dragg[ed] the matter out for months"). But Watkins's intentional-infliction claim is unlike those in the cases he cites; in those cases, liability arose from a long series of cumulative acts, any one of which likely was insufficient by itself to support the claim. Here, we do not have a situation in which the initial acts in a series of alleged wrongdoing are not sufficient by themselves to support a claim. The facts Watkins alleged to support his contention that Arpaio's investigation was groundless and politically motivated—as well as the public statements he alleged and the seizures of books, records and trucks—all occurred at or shortly after the commencement of the investigation in 2005.

¶ 16 Moreover, although Watkins alleged the continuing *existence* of the allegedly wrongful investigation was tortious, he offered no evidence on summary judgment of any tortious acts the Sheriff's Office committed within the year before he filed the complaint that might give rise to a claim.

The Sheriff's Office turned over the investigation to the Attorney General some 18 months after it began, and the Attorney General passed the case to the Maricopa County Attorney in 2007. Document discovery indicated that in July 2008, a Sheriff's Office detective reviewed the results of a witness interview deputies had conducted in June 2005. But that is the latest act by the Sheriff's Office revealed in the documents.

¶ 17 The discovery Watkins conducted pursuant to Rule 56(f) also failed to uncover any public statements by Sheriff's Office authorities about the investigation within a year before the complaint was filed. Although Watkins argues on appeal that the superior court should have allowed him to depose Sheriff's Office authorities, he sought that testimony to support his contention that the investigation was politically motivated, not to prove the Sheriff's Office committed any tortious acts within the limitations period.

■ ¶ 18 Watkins suggests the victim of a groundless investigation that continues for more than a year would be hard pressed as a practical matter to file suit before the investigation concludes. The common-law "continuing wrong" doctrine would enable such a victim to wait to sue until after the investigation is finished. But the limitations rules that apply to Watkins's claim against Arpaio are creatures of statute, not the common law, and those statutes do not allow one in Watkins's situation to wait to bring suit until more than a year after acts sufficient to state a claim occur. Under A.R.S. §§ 12–821 and –821.01(B), the victim of a tort by a public entity or employee in Arizona has but one year to sue after he or she knows of injury caused by the tortious act, and that applies regardless of the tort, whether it be intentional infliction of emotional distress, defamation, intentional interference with contract or invasion of privacy.[5]

¶ 19 In the absence of any evidence that Arpaio or those working under his direction committed any act within a year of the 2011 complaint that would support Watkins's claim for intentional infliction of emotional distress, the superior court correctly dismissed the claim as barred by limitations pursuant to A.R.S. §§ 12–821 and –821.01(B).

## C. False–Light Invasion of Privacy.

■ ¶ 20 As applicable here, a claim for false-light invasion of privacy requires proof that the defendant "gave publicity to information placing the plaintiff in a false light," knowing of the falsity or with reckless disregard for the truth. *Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, 580, ¶ 29, 343 P.3d 438, 450 (App.2015). The superior court entered summary judgment in Arpaio's favor on this claim because Watkins could not identify a public statement Arpaio made about him within a year of the filing of the complaint.

¶ 21 We are unaware of any authority compelling the conclusion that a false-light claim is subject to the "continuing wrong" doctrine, and we decline Watkins's request to apply it here. Because Watkins did not cite any actionable statement Arpaio made concerning him within a year of filing his lawsuit, the superior court did not err in dismissing the claim for invasion of privacy by false light.

## CONCLUSION

¶ 22 For the foregoing reasons, we affirm the entry of judgment against Watkins.

---

**5.** A required element of a claim for malicious prosecution is that the prosecution "terminate in favor of the plaintiff." *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975). The one-year limitations period on that claim would begin to run, therefore, upon termination of the prosecution. Watkins could not allege a claim for malicious prosecution because the investigation did not result in a prosecution.