IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

R.O.I. PROPERTIES LLC, et al., *Plaintiffs/Appellants*,

*v.*

BETH FORD, et al., *Defendants/Appellees*.

No. 1 CA-TX 18-0001
FILED 2-21-2019

Appeal from the Arizona Tax Court
No. TX2017-000016
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Lane & Nach, PC, Phoenix
By Stuart Rodgers
*Counsel for Plaintiff/Appellant R.O.I. Properties, LLC*

Engelman Berger PC, Phoenix
By Scott B. Cohen, Bradley D. Pack
*Counsel for Plaintiff/Appellant Compass Bank*

Pima County Attorney's Office, Tucson
By Andrew L. Flagg
*Counsel for Defendants/Appellees Beth Ford, Bill Ford and Pima County*

## OPINION

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

**C A T T A N I**, Judge:

**¶1** ROI Properties LLC and Compass Bank (collectively, "Taxpayers") appeal the tax court's judgment dismissing their complaint in which they asserted claims for refund of property taxes paid, declaratory judgment, and mandamus relief, all premised on an alleged entitlement to the charter school exemption for the 2015 tax year. Because the charter schools previously operating on the property ceased operations in May 2015, the property was not exempt for the 2015 tax year, and we thus affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** Under Arizona Revised Statutes ("A.R.S.") § 42-11104(C)(1), property owned by a § 501(c)(3) nonprofit organization that operates as a charter school is exempt from taxation if the property is used for education and not used or held for profit. Luz Social Services, Inc., a qualifying nonprofit corporation, owned three parcels of real property (the "Property") in Pima County, where it operated nonprofit charter schools.

**¶3** Luz filed for bankruptcy protection in April 2014, at which time the Property became part of the bankruptcy estate, subject to the automatic bankruptcy stay. *See* 11 U.S.C. §§ 362(a), 541(a)(1). Compass, one of Luz's creditors and the beneficiary of a deed of trust on the Property, sought leave to pursue a sale of the Property. In February 2015, the bankruptcy court granted limited stay relief and authorized Compass to sell the property, but further ordered that the schools could continue to operate until May 29 and that no sale could be completed before that date.[1] As part of this process, ROI was appointed as receiver with respect to the Property.

---

[1] Taxpayers' complaint alleged more broadly that the bankruptcy court's order "terminat[ed] the automatic stay of 11 U.S.C. § 362(a) with respect to the Property," but the order itself reflects more limited stay relief

**¶4** The schools ceased all operations on May 29, 2015. Although the Pima County Assessor had classified the Property as tax exempt under the charter school exemption and had applied the exemption through the 2014 tax year (during which time the schools had remained in continuous operation), the Assessor did not apply the exemption for the 2015 tax year. Accordingly, 2015 property taxes were fixed, levied, and assessed against the Property (which remained part of the bankruptcy estate); the taxes went unpaid, and the first installment became delinquent as of November 2, 2015. *See* A.R.S. § 42-18052(A)–(B).

**¶5** The Property was eventually sold to a third-party on April 28, 2016. The next day, in conjunction with closing the sale (and timely as to the second installment of 2015 taxes), Luz (through ROI) paid the full amount of 2015 taxes owed on the Property (including interest on the delinquent first installment), totaling over $180,000. *See* A.R.S. § 42-18052(B) (second installment not delinquent until May 1 after close of tax year).

**¶6** Less than one year later, in April 2017, Taxpayers filed a tax claim in superior court, asserting that the Property remained entitled to the charter school exemption for the 2015 tax year, seeking a declaratory judgment to that effect, and requesting a refund of the 2015 taxes paid.[2] *See* A.R.S. § 42-11005(A). Taxpayers concurrently filed a petition for a refund with the Pima County Board of Supervisors, invoking a special administrative procedure provided by the charter school exemption statute. *See* A.R.S. § 42-11104(G) (directing that, upon petition by a qualifying nonprofit charter school that failed to timely file an eligibility affidavit but otherwise qualified for the exemption, the county board of supervisors order the county treasurer to refund property taxes paid within the previous year and strike from the tax rolls any unpaid taxes, interest, and penalties). After the Board denied the petition, Taxpayers amended their tax court complaint to add a special action claim seeking a writ of

---

tailored only to "Compass' enforcement of its rights under its deed of trust on the Property."

[2]     The bankruptcy court had previously issued an order confirming that the bankruptcy stay had terminated with respect to the Property and that the bankruptcy estate abandoned any interest in the claim for refund of 2015 property taxes on the Property. Similarly, the receivership was reopened for ROI to assert the refund claim on Luz's behalf.

mandamus directing the Board and the County Treasurer to refund the 2015 tax payment.

¶7        The County Defendants (Pima County Treasurer, Pima County Assessor, and Pima County) then moved to dismiss the complaint, arguing that (1) the tax court lacked jurisdiction over the illegal-tax claim because the 2015 taxes had not been paid before delinquency as required by A.R.S. § 42-11004, (2) the tax court should decline to exercise special action jurisdiction over the mandamus claim because Taxpayers had access to an adequate remedy at law (an illegal-tax claim), and (3) in the alternative, the complaint failed to state a claim for which relief could be granted because, as a matter of law, the Property was not exempt for the 2015 tax year as it was used for operation of a charter school only through May 29, 2015. Relying on the first two grounds, the tax court granted the motion and dismissed the complaint in its entirety.

¶8        Taxpayers timely appealed the resulting judgment, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶9        Taxpayers argue that the tax court erred by dismissing the illegal-tax claim based on Taxpayers' failure to timely pay the 2015 taxes and by declining to exercise jurisdiction over the mandamus claim based on the availability of an alternative remedy at law. We decline to address these arguments, however, because, even assuming those grounds were improper, dismissal was nevertheless warranted. As explained below, based on the allegations of the complaint, the Property lost its exempt status for the 2015 tax year because the charter schools ceased operations as of May 29, 2015. The Property therefore was not entitled to the exemption for the 2015 tax year, and Taxpayers' illegal-tax and mandamus claims fail as a matter of law.

## I.        Charter School Exemption.

¶10        Article 9, Section 2(2), of the Arizona Constitution authorizes the Legislature to exempt from taxation "[p]roperty of educational . . . institutions not used or held for profit," and the Legislature has crafted such an exemption for charter schools. Under A.R.S. § 42-11104(C)(1), property and buildings belonging to a § 501(c)(3) nonprofit organization that operates as a charter school "are exempt from taxation beginning on the date the nonprofit organization acquires ownership of the property and buildings if the property and buildings are used for education and are not used or held for profit."

4

¶11 To establish entitlement to the exemption, the qualified charter school must file an initial eligibility affidavit with the county assessor in the first two months of the tax year, and an additional eligibility affidavit each year thereafter. *See* A.R.S. §§ 42-11104(D), -11152(A)(1)–(2), -11153(A). If a qualified charter school provides the assessor with proof of its § 501(c)(3) tax exempt status, however, the annual affidavit requirement is waived "until all or part of the property is conveyed to a new owner or is no longer used for education," at which point the organization must notify the assessor in writing. A.R.S. § 42-11104(E).

¶12 For most taxpayers, failure to timely file an exemption eligibility affidavit (or acquiring the property after the time to file has passed) waives entitlement to the exemption. *See* A.R.S. § 42-11153(A); *Church of the Isaiah 58 Project of Ariz., Inc. v. La Paz County*, 233 Ariz. 460, 463, ¶ 10 (App. 2013). The charter school exemption statute, however, provides a special administrative remedy for charter schools faced with these circumstances. A qualifying charter school owning property used for education and "otherwise qualif[ying] for exemption" that fails to timely file an eligibility affidavit may directly petition the county board of supervisors to secure the benefit of the charter school exemption. *See* A.R.S. § 42-11104(G); *see also* A.R.S. § 42-11109(E) (providing a comparable special administrative remedy with regard to an exemption for religious organizations). If the charter school meets the requirements for the exemption, the statute requires the board of supervisors to direct a refund of any property taxes paid within the preceding year and to forgive any unpaid property taxes, along with associated interest and penalties. A.R.S. § 42-11104(G)(1)–(2).

## II. Entitlement to Exemption.

¶13 The County Defendants urge that based on the allegations of the complaint, the Property lost its exempt status for the 2015 tax year when the charter schools ceased operations on May 29, 2015. Although the tax court did not rule on this basis, we may affirm the court's dismissal order on any basis supported by the record. *See Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 390–91, ¶ 10 (App. 2014).

¶14 Dismissal under Arizona Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper if, "assum[ing] the truth of all well-pleaded factual allegations and indulg[ing] all reasonable inferences from those facts," plaintiffs nevertheless "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶¶ 8–9 (2012) (citation omitted). We consider de novo

whether dismissal was warranted for failure to state a claim. *Id.* at 355, ¶ 7. We similarly address issues of statutory interpretation de novo, considering the plain language of the statute as the primary indicator of meaning and considering the statute as a whole in the context of the broader statutory scheme. *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9 (2004); *see also Sempre Ltd. P'ship v. Maricopa County*, 225 Ariz. 106, 108, ¶ 5 (App. 2010).

¶15 All property in Arizona is subject to taxation unless expressly exempted. Ariz. Const. art. 9, § 2(13); A.R.S. § 42-11002. Because exemptions represent a departure from the general rule that all taxpayers should share the common burden of taxation, statutes granting exemptions are strictly construed, albeit not so strictly as to destroy the legislative purpose underlying the exemption. *Capitol Castings*, 207 Ariz. at 447, ¶ 10. All ambiguities are construed against exemption, and the taxpayer bears the burden to establish that the exemption applies. *Conrad v. Maricopa County*, 40 Ariz. 390, 393 (1932); *Hub Props. Tr. v. Maricopa County*, 238 Ariz. 171, 172, ¶¶ 6–7 (App. 2015).

¶16 The charter school provision exempts property and buildings from taxation if owned by a nonprofit organization that operates as a charter school, but ownership by a nonprofit charter school is not enough: the property itself must be "used for education." A.R.S. § 42-11104(C)(1). Here, as alleged in Taxpayers' complaint, the Property was used for education only through May 29, 2015; the schools ceased operations entirely as of May 30, 2015. Because the Property was no longer used for education after that date—before the assessment period for the 2015 tax year was complete—the Property lost a necessary condition for entitlement to the charter school exemption, lost its exempt status, and thus as a matter of law was subject to taxation for the 2015 tax year.

¶17 Taxpayers urge, however, that because the Property was exempt for the first five months of the year, it was entitled to the exemption for the entire tax year. We have previously addressed and rejected this same argument in the context of another tax exemption. In *Hub Properties Trust v. Maricopa County*, a private party purchased property from a municipality in March 2011. 238 Ariz. at 172, ¶ 2. Because government-owned property is exempt from property taxes, Ariz. Const. art 9, § 2(1); A.R.S. § 42-11102(A), the private party argued that it was entitled to the exemption for the 2011 tax year based on the premise that "once property is exempt, it is exempt for the entire tax year even if there is a change of use or ownership." 238 Ariz. at 172–73, ¶ 8. We affirmed the tax court's contrary ruling that the property's period of exemption began the day it

was acquired by the government and ended the day it was transferred from the government to private ownership. *Id.* at 173, ¶ 11. Even though the property would have been entitled to the exemption during the two months of the tax year before it was sold, it was no longer exempt for that tax year once purchased by the private party. *Id.*

¶18 Taxpayers acknowledge the *Hub Properties* decision, but argue that it is not controlling because the government-owned property exemption at issue in that case operated automatically and depended entirely on government ownership, whereas the charter school exemption involves an administrative process at the beginning of the tax year to determine eligibility. According to Taxpayers, a private purchaser of a government-owned property would thus have no legitimate expectation to receive the benefit of the exemption, whereas a charter school that completed the administrative eligibility process would have both the expectation and legal entitlement to receive the exemption for that entire year regardless of a change in use or ownership. Taxpayers assert that extinguishing the exemption after the close of the administrative eligibility process (even if the property is no longer used for education) is in effect an improper retroactive termination of the exemption.

¶19 Taxpayers' argument conflates the period for filing an eligibility affidavit (January to March 1 of the tax year)—a procedural requirement for establishing entitlement to the charter school exemption—with the substantive requirements of the exemption itself. *Compare* A.R.S. § 42-11104(C)(1), *with* A.R.S. §§ 42-11104(D)–(E), -11152(A), -11153(A). And § 42-11104(C)(1) places no time limit on the requirement that the charter school exemption be applied only "if the property and buildings are used for education." Moreover, even nonprofit charter schools that are relieved of the obligation to file subsequent annual eligibility affidavits are nevertheless required to notify the assessor in writing when "all or part of the property is conveyed to a new owner or is no longer used for education," A.R.S. § 42-11104(E), which further suggests that the exemption may be extinguished by conveyance or change of use. If the exemption is extinguished mid-year—whether by sale to another entity or by the charter school retaining ownership but ceasing use for education—the property is no longer entitled to the exemption for that tax year. In short, the logic underlying the *Hub Properties* decision applies here, and Taxpayers' argument relies on the same faulty premise that we rejected in that case.

¶20 Taxpayers further argue that § 42-11104 does not specify that the property must be used as a charter school throughout the entire tax year in order to qualify for the exemption, positing that such a requirement

would be inconsistent with common school breaks such as summer vacation. Although the statutory requirement that the property be "used for education" presumably does not require educational use every day of the year, it expressly conditions the exemption on continued educational use. And here, the charter schools ceased operations entirely in the middle of the tax year, before the property taxes were fixed, levied, and assessed and before those taxes came due. *See* A.R.S. §§ 42-17151(A), -18052(A). The Legislature could have authorized the exemption for property that *loses* its eligibility mid-year, just as it expressly did for property that *gains* eligibility after being acquired by a nonprofit charter school mid-year. *See* A.R.S. § 42-11104(C)(1), (G); *see also* S. Fact Sheet (Apr. 7, 2008), H.B. 2330, 48th Leg., 2d Reg. Sess. (Ariz. 2008); H.R. Bill Summary (Feb. 20, 2008), H.B. 2330, 48th Leg., 2d Reg. Sess. (Ariz. 2008). But nothing in § 42-11104 suggests that the benefit of the exemption survives even after the property no longer meets the substantive eligibility requirements.

¶21 Finally, Taxpayers argue in the alternative that the amount of property taxes should be prorated to reflect that the Property was exempt for five months of the tax year. Although the Legislature could have authorized proration for charter school property that loses its exempt status mid-year—as it has done expressly in the context of destroyed property, *see* A.R.S. § 42-15157—the Legislature did not do so. Section 42-11104 itself does not authorize proration, and Taxpayers offer no other authority to support their argument. Accordingly, we conclude that the Property was not entitled to an exemption for the 2015 tax year because it lost its tax-exempt status when the charter schools ceased operation and the Property was no longer used for education. Taxpayers' mandamus claim and illegal-tax claims for refund and declaratory relief thus fail as a matter of law, and dismissal was proper.

## III. Attorney's Fees on Appeal.

¶22 Taxpayers seek an award of attorney's fees on appeal under A.R.S. § 12-2030(A), which directs an award of fees to a private party that prevails on the merits in a mandamus action, and under A.R.S. § 12-348(B)(1), which allows an award of fees to a private party that prevails on the merits of a tax claim. Because Taxpayers have not prevailed, we deny their request for fees.

## CONCLUSION

¶23      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA