NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JULIA LORENCE, *Plaintiff/Appellant*,

*v.*

MAYO CLINIC, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0207
FILED 2-29-2024

---

Appeal from the Superior Court in Maricopa County
No.  CV2022-004085
The Honorable Katherine Cooper, Judge

**AFFIRMED**

---

COUNSEL

The Marhoffer Law Firm, Scottsdale
By David Marhoffer
*Counsel for Plaintiff/Appellant*

Snell & Wilmer L.L.P, Phoenix
By John F. Lomax, Colin Ahler, Caitlin E. White
*Counsel for Defendants/Appellees Mayo Clinic, et al.*

Arizona State University – General Counsel, Tempe
By Kylie Crawford TenBrook, Kwan Piensook
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe joined. Judge Daniel J. Kiley concurred in part and dissented in part.

---

**P E R K I N S**, Judge:

¶1 Julia Lorence appeals from the dismissal of her lawsuit against the Arizona Board of Regents (the "Board"), Arizona State University ("ASU"), and the Mayo Clinic and certain of its employees (collectively, the "Mayo Defendants"). Lorence raised claims of discrimination and other employment related violations. The superior court determined that she failed to state any claims upon which it could grant relief. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 On appeal from a motion to dismiss, we "must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012).

¶3 Lorence is a native German and former ASU student. She suffered a stroke in 2013 resulting in speech and language impediments. She enrolled for undergraduate studies at ASU in 2016 and graduated in May 2019. From January 2017 until May 2019, Lorence was an intern at the Mathematical Neuro Oncology Laboratory (the "Laboratory") at the Mayo Clinic Arizona ("Mayo Clinic").

¶4 Dr. Kristin Swanson is a professor at ASU and member of the Laboratory. Before Lorence presented her honors thesis at a conference during her internship, she was at Swanson's house where an intoxicated Swanson demanded that she dance to music. At the conference, Swanson and Yvette Lassiter Morris, another laboratory employee, pressured Lorence to join them in drinking alcohol and going to a night club to see drag and strip shows.

¶5 In June 2019, Lorence began full-time employment at the Laboratory. Several of the employees were Swanson's friends or their family members, including Lorence's supervisor Lassiter Morris, Andrea

Hawkins Daarud, Lisa Paulson, and Paulson's son, who was an intern. When Lorence raised concerns that minority summer interns were required to perform more work than Swanson's friends and their family members, Lassiter Morris yelled at Lorence and Paulson became upset with her.

¶6        ASU investigated the mistreatment of undergraduates at the Laboratory. Lorence was interviewed about the working conditions there and provided a confidential statement to ASU officials conducting the investigation. Defendants later learned of the substance of Lorence's statement, and made derogatory comments to her. Gustavo de Leon, another Laboratory employee, intentionally mispronounced her first name, calling her "Hoolia Goolia." De Leon also prevented her from making presentations and denied her opportunities to receive commendations, while permitting male team members to make and receive the same. When Lorence complained about de Leon's conduct to Swanson and Lassiter Morris, they ignored her complaints. In 2020, Lorence never received her annual performance review while both de Leon and another male colleague received theirs.

¶7        In June 2020, Lorence filed a formal complaint with the human resources department of the Mayo Clinic, alleging that Swanson, Lassiter Morris, de Leon, and other employees harassed her based on her national origin, sex, and disabilities. In August 2020, the human resources department placed Lorence on administrative leave pending investigation of her complaints. Lorence raised concerns that the department's investigator had a "pre-existing relationship" with Swanson, and that the investigator's daughter was a visiting student of the lab in summer 2018.

¶8        In May 2020, before filing her complaint, Lorence wrote and submitted a grant application to the National Institutes of Health (the "NIH"). In September 2020 the NIH awarded the grant to "Mayo Clinic Arizona," but Lorence could not participate in the work related to the grant because she was on administrative leave.

¶9        In October 2020, the human resources department informed Lorence the internal investigation revealed no discrimination. Lorence returned to work at the Laboratory the following month and began grant work. Swanson informed Lorence that continued reference to the allegations the investigation did not substantiate would be grounds for termination. And during a meeting, Swanson made a "threatening joke" about being able to fire Lorence at any time.

3

**¶10**        Lorence did not receive a performance review from November 2020 to January 2021 despite multiple requests for one. And Lorence could no longer meet with physicians one-on-one to discuss her research. At the same time, Lorence had to attend multiple meetings per week whereas her male colleagues did not have to attend frequent meetings.

**¶11**        In December 2020, Lorence applied to other departments at the Mayo Clinic but the human resources department rejected her applications. In October 2021, Swanson used figures from Lorence's thesis, but failed to cite or credit Lorence. In March 2022, a clinic Lorence had co-founded as an undergraduate opened without crediting her as a co-founder or inviting her to its opening ceremony.

**¶12**        On January 17, 2021, Lorence resigned her position. Three months later, on April 2, 2021, Lorence filed a charge of employment discrimination with the Arizona Attorney General's Office, Civil Rights Division, alleging discrimination based on sex, national origin, and whistleblowing. Almost a year thereafter, on March 23, 2022, Lorence filed a second amended charge of discrimination to include discrimination based on disabilities.

**¶13**        A week later, on March 31, 2022, Lorence filed her complaint in this matter. She asked the court for injunctive relief requiring the Board and ASU to develop anti-retaliation policies for witnesses participating in investigations. Lorence also sought to enjoin Defendants from retaliating against her, including interfering or blacklisting her from employment and medical school admission. Lorence asked the court to enjoin Swanson from withholding a letter of recommendation Swanson had previously drafted for Lorence. Lorence also sought declaratory judgment specifying the parties' rights and obligations related to the NIH grant, use of Lorence's research by Swanson, and Swanson's letter of recommendation.

**¶14**        Lorence raised additional claims against the Mayo Defendants alleging: (1) sex, national origin, and disability discrimination in violation of the Arizona Civil Rights Act; (2) constructive discharge in violation of the Arizona Employment Protection Act; (3) blacklisting in violation of A.R.S. § 23-1361; and (4) intentional infliction of emotional distress. Lorence did not bring a claim alleging that Defendants retaliated against her because of protected conduct.

**¶15**        The superior court dismissed each count for failure to state a claim, dismissed ASU as a non-jural entity, and dismissed claims against

Paulson and Hawkins Daarud for lack of personal jurisdiction. Lorence timely appealed, and we have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶16** "We review de novo an order granting a motion to dismiss for failure to state a claim." *Abbott v. Banner Health Network*, 239 Ariz. 409, 412, ¶ 7 (2016). "Dismissal is appropriate under [Arizona Rule of Civil Procedure ("Rule")] 12(b)(6) only if as a matter of law plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman*, 230 Ariz. at 356, ¶ 8 (cleaned up). "[W]e may affirm the court's dismissal order on any basis supported by the record." *R.O.I. Props. LLC v. Ford*, 246 Ariz. 231, 235, ¶ 13 (App. 2019).

### I. Declaratory Relief

**¶17** Lorence sought a declaration of the "rights and obligations" of the parties with respect to Swanson's letter of recommendation and to credit for Swanson's use of Lorence's research.

**¶18** The Declaratory Judgments Act is "an instrument of preventive justice that allows a court to determine a person's rights, status or other legal relations." *Canyon del Rio Invs., L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 340, ¶ 18 (App. 2011) (cleaned up). To obtain declaratory relief, the plaintiff must assert a "legal, protectible interest" in the rights being determined. *Riley v. Cochise Cnty.*, 10 Ariz. App. 55, 59 (1969); *Original Apartment Movers, Inc. v. Waddell*, 179 Ariz. 419, 420 (App. 1993); *see also* A.R.S. § 12-1831. To have a legal interest in the letter and the credit, Lorence "must present a state of facts showing [she] has a present legal right against the defendant with respect to which [she] may be entitled as a general rule to some consequential relief." *Riley*, 10 Ariz. App. at 59. But Lorence's conclusory allegations that she has a legal right to Swanson's letter of recommendation or to credit for Swanson's use of her research are legally insufficient. *See Coleman*, 230 Ariz. at 356, ¶ 9 ("mere conclusory statements are insufficient").

**¶19** Lorence also requested declaratory relief against the Mayo Defendants with respect to the NIH's grant, asserting that being placed on administrative leave prevented her from completing work related to the grant. Lorence appears to argue that she has an interest in the grant because she applied for it. But Lorence did not allege that she is the grantor or grantee, nor did she allege any other basis for the court to conclude she has a legal right to or interest in the grant funds or to performing grant-related work. Indeed, the NIH explicitly awarded the grant to "MAYO CLINIC

ARIZONA." The court properly dismissed Lorence's claim for declaratory relief.

## II.     The Arizona Civil Rights Act

**¶20**          A plaintiff asserting a violation of the Arizona Civil Rights Act must first file a charge with the Arizona Civil Rights Division within 180 days after the alleged unlawful employment practice occurred. A.R.S. § 41-1481(A). An employee who fails to timely file a charge "loses her right to sue." *Peterson v. City of Surprise*, 244 Ariz. 247, 251, ¶ 13 (App. 2018).

**¶21**          Lorence filed her first charge alleging sex and national origin discrimination on April 2, 2021, and her second charge alleging disability discrimination on March 23, 2022. The first charge described conduct from June 2020 until January 2021 while she was employed at the Laboratory. The second charge described conduct from June 2020 until April 2021. Lorence did not allege a claim for retaliatory termination of employment, available under Arizona's Employment Protection Act, in her complaint. *See* A.R.S. § 23-1501(A)(3)(b)(i), (c)(ii). And that statute "does not permit her to refashion her discrimination claim into a retaliation claim." *Peterson*, 244 Ariz. at 252, ¶ 17 (App. 2018).

### A.  *Lorence's disability charge*

**¶22**          The superior court properly dismissed the disability discrimination claim as untimely because none of the alleged conduct occurred within 180 days of March 23, 2022, when Lorence filed her disability charge. Lorence contends that her disability claim related back to the filing date of her first charge on April 2, 2021, because the Arizona Administrative Code allowed her to amend the first charge. That Code permits a charge to be amended: "1. To cure technical defects or omissions, including but not limited to, failure to swear to the charge, or 2. To clarify and amplify allegations." A.A.C. R10-3-203(B) (amendment provision). By its plain language, the amendment provision contemplates errors in the form of the charge, not substantive omissions such as an entirely new theory of liability. Likewise, "clarify" and "amplify" apply to minor changes or additions to the alleged facts substantiating a charge and not the addition of a new theory of liability. *Compare* A.A.C. R10-3-203(B), *with* 29 C.F.R. § 1601.12(b); *see Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 574–75 (7th Cir. 1998) (holding "amplify and clarify" amendment language in federal discrimination regulation does not encompass new theory of liability). The amendment provision does not save Lorence's untimely disability discrimination claim, which the superior court correctly dismissed.

### B. *Lorence's sex and national origin discrimination charge*

**¶23**        The superior court also properly dismissed Lorence's sex and national origin discrimination claim for failure to allege discriminatory employment acts within the 180-day window. Because Lorence filed her first charge on April 2, 2021, she could allege discrimination only for the period beginning on October 4, 2020. *See Cruz v. City of Tucson*, 243 Ariz. 69, 74, ¶ 20 (App. 2017) (plaintiff could sue only for acts occurring within the 180-day filing window in the notice of claim statute).

**¶24**        Lorence argues that all the allegations identified in her complaint as occurring after October 4, 2020, showed sex and national origin discrimination. In her opening brief, Lorence specifically highlights four alleged acts of sex and national origin discrimination: first, Defendants' inadequate investigation of her discrimination claims, "utilizing an investigator with a clear conflict of interest"; second, Swanson's threat to fire her if she continued to raise her discrimination claims that the internal investigation had discredited; third, the Mayo Defendants' failure to provide her with a performance review, which she notes in her appellate briefing is a "prerequisite to increases in compensation"; and fourth, requirements for her to attend multiple meetings per week when male co-workers did not have to attend "frequent meetings."

**¶25**        But none of these actions violated the Arizona Civil Rights Act. The Act prohibits employment discrimination (1) "with respect to the individual's compensation, terms, conditions or privileges of employment" and (2) "limit[ing], segregate[ing] or classify[ing] employees . . . in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee." A.R.S. § 41-1463(B)(1)–(2). Because our Civil Rights Act is modeled after federal employment discrimination laws, "Title VII case law is persuasive in interpreting the Arizona statute." *Timmons v. City of Tucson*, 171 Ariz. 350, 354 (App. 1991).

**¶26**        Under federal law, to state a claim for discriminatory disparate treatment under Title VII, the plaintiff must plausibly allege that: "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] position; (3) [she] experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Albro v.*

*Spencer*, 854 Fed. App'x 169, 169–70 (9th Cir. 2021) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

¶27        Lorence sufficiently pled that she is a member of a protected class, and Defendants do not argue that she was unqualified for her position. But Lorence insufficiently pled either that the alleged discriminatory acts rise to the level of an adverse employment action or circumstances that give rise to an inference of discrimination. Under both the Act and Title VII, an adverse employment action constitutes a significant change in an "employee's status" when it results in "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

¶28        Taking Lorence's alleged specific instances of discriminatory treatment each in turn demonstrates she has failed to sufficiently allege a violation of the Act. First, dissatisfaction with the Mayo Clinic's investigation does not rise to an adverse employment action because it is not a term, condition, or privilege of employment to which she is entitled. *See Noakes v. Dep't of Homeland Sec.*, No. CV 22-213, 2022 WL 11435959, at *11 (E.D. La. Oct. 18, 2022) ("declining to pursue disciplinary action against [plaintiff's] coworkers is not an adverse employment action"); *Zwick v. Univ. of S. Fla. Bd. of Trs.*, 505 F. Supp. 3d 1317, 1335 n.16 (M.D. Fla. 2020) ("dissatisfaction with an investigation [does not] constitute an adverse employment decision").

¶29        Second, "numerous courts have concluded that verbal reprimands and threats of termination do not constitute adverse employment actions" in the context of Title VII discrimination claims. *Medearis v. CVS Pharmacy*, 92 F. Supp. 3d 1294, 1312 (N.D. Ga. 2015), *aff'd sub nom. Medearis v. CVS Pharmacy, Inc.*, 646 Fed. App'x 891 (11th Cir. 2016) (cleaned up).  Lorence did not allege that the threat here resulted in any employment action being taken against her. The threat alone is insufficient.

¶30        Third, Lorence's assertion that she did not receive a performance review, by itself, does not state a claim for relief. *See Watkins v. Harvey*, No. JFM-06-2728, 2007 WL 1861024, at *1 (D. Md. June 19, 2007) ("[T]he failure to provide a performance evaluation does not itself constitute an adverse employment action."). Nowhere in her complaint did Lorence allege that a performance review is a prerequisite to increases in compensation, or that her employment terms entitled her to such reviews upon request or within specified time frames.

¶31 And fourth, being required to attend more meetings than male co-workers, even if true, does not rise to the level of actionable conduct. *See Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 Fed. App'x 351, 353 (4th Cir. 2009) ("meetings with supervisors . . . do not constitute adverse employment actions").

¶32 Even if any these actions rose to the level of an adverse employment action, however, Lorence failed to plead a nexus between the actions and her protected status giving rise to an inference of discriminatory treatment. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) ("Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision.") (cleaned up); *Noakes*, 2022 WL 11435959, at *12 (plaintiff must demonstrate a "nexus between the conduct and any racially discriminatory motive"). Except for Lorence's claim that she was required to attend meetings that her male colleagues were excused from, none of the conduct she complained of involved facially disparate treatment between her and "similarly situated individuals outside [her] protected class." *Peterson*, 358 F.3d at 603. Although Lorence claimed Defendants' treatment of her was generally discriminatory, a facially neutral act by itself does not demonstrate animus. *See Noakes*, 2022 WL 11435959, at *12.

¶33 The partial dissent contends Lorence sufficiently pled that Defendants' failure to provide her with Swanson's letter of recommendation constituted a violation of the Arizona Civil Rights Act. Assuming, without deciding, that this allegation was timely and that withholding a letter of recommendation may be an actionable adverse employment action, Lorence did not allege circumstances leading to a reasonable inference of discriminatory motive for withholding the letter. To the contrary, she explicitly characterized Defendants' motive as retaliation when she asked the court to enjoin Swanson "from retaliating against her by withholding her letter of recommendation." And Lorence did not argue on appeal that withholding the letter constituted a basis for her discrimination claim. Rather, she expressly linked the letter only to her injunctive and declaratory relief claims.

¶34 The failure to allege a connection between a discriminatory motive and the adverse action at issue is, by definition, the failure to state a claim for which relief may be granted. The dissent disregards plaintiff's contrary characterization of motive and finds a sufficiently pled claim by piecing together (1) general allegations that discrimination occurred, (2) an allegation that Defendants withheld the letter, and (3) boilerplate "incorporates by reference" language. Such herculean efforts to save

Lorence's complaint go beyond this court's proper role. *See Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint.") (cleaned up).

¶35　　　The superior court did not err by dismissing Lorence's Arizona Civil Rights Act claim.

### III.　Arizona Employment Protection Act

¶36　　　Lorence claimed that Defendants' conduct resulting in her resignation amounted to constructive discharge under A.R.S. § 23-1502. The relevant statute of limitations period for such statutory claims is one year. A.R.S. § 12-541(5); *Worldwide Jet Charter, Inc. v. Christian*, 255 Ariz. 67, 71, ¶ 14 (App. 2023) ("[C]onstructive discharge claims are governed exclusively by the [Arizona Employment Protection Act]."). Lorence alleged she was constructively discharged on January 17, 2021, when she tendered her notice of intent to resign. But Lorence did not file her complaint until March 31, 2022, two months after the expiration of the one-year limitations period. The superior court did not err in dismissing her constructive discharge claim for being untimely.

### IV.　Blacklisting

¶37　　　The Mayo Defendants argue that Lorence has waived her blacklisting claim because in her opening brief she did not challenge the superior court's ruling that she failed to allege essential elements of blacklisting under A.R.S. § 23-1361(A). Lorence contends her detailed discussion of Arizona's notice pleading standard in her opening brief was sufficient to defeat waiver. But the superior court dismissed her blacklisting claim for failure to state a claim because she did not allege all the elements in A.R.S. § 23-1361 and not because Lorence failed to comply with notice pleading standards. And Lorence cannot, as she attempts to do, for the first time in her reply brief challenge the court's conclusion that she did not state a claim for blacklisting. *Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007). She has waived her opportunity to challenge the superior court's dismissal of her blacklisting claim under Rule 12(b)(6).

### V.　Intentional Infliction of Emotional Distress

¶38　　　To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant intentionally or recklessly caused "severe emotional distress by extreme and outrageous conduct." *Watkins v.*

*Arpaio*, 239 Ariz. 168, 170–71, ¶ 8 (App. 2016). Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Johnson v. McDonald*, 197 Ariz. 155, 160, ¶ 23 (App. 1999) (cleaned up). "It does not include mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Christakis v. Deitsch*, 250 Ariz. 246, 250, ¶ 10 (App. 2020) (cleaned up). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Lucchesi v. Frederic N. Stimmel, M.D., Ltd.*, 149 Ariz. 76, 79 (1986) (citing Restatement (Second) Torts § 46). "[A] relevant factor in determining outrageousness is defendant's knowledge that plaintiff is particularly susceptible to emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554 (App. 1995).

¶39        Lorence contends the conduct she identified in her complaint is sufficiently outrageous given the "wide variety of cases in which 'extreme' and 'outrageous' conduct [has been] found." Lorence alleged in her complaint that, because of her background and disabilities, she had a peculiar susceptibility to such emotional distress. The conduct Lorence identified involves rude and insulting incidents when the Mayo Defendants intentionally mispronounced her name, yelled at her, and pressured her to dance, drink, and attend a drag show at a night club. But "insults, indignities, [and] threats," while reprehensible, are not "extreme and outrageous" conduct. *See Christakis*, 250 Ariz. at 250, ¶ 10. And although Lorence argues that she was particularly susceptible to emotional distress due to her stroke, the only long-term disabilities she alleged were speech and language impediments. Her conclusory statements that such restrictions rendered her particularly sensitive to rude and insulting conduct are legally insufficient. *See Coleman*, 230 Ariz. at 356, ¶ 9. The superior court correctly dismissed Lorence's intentional infliction of emotional distress claim.

## VI.    The Continuing Torts Doctrine and Discovery Rule

¶40        Lorence argues that the "continuing torts" doctrine or the "discovery rule" save her otherwise untimely claims. Some courts outside of Arizona have held that "a tort claim based on a series of closely related wrongful acts may be treated as alleging a continuing wrong that accrues for limitations purposes not at the inception of the wrongdoing but upon its termination." *Watkins*, 239 Ariz. at 171, ¶ 9. Arizona has not explicitly adopted this doctrine, and, in any event, it generally applies to hostile work environment claims because "[t]heir very nature involves repeated

conduct." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Lorence did not bring a hostile work environment claim, which is "different in kind from discrete acts." *Id.* Instead, Lorence brought causes of action tied to specific events. Indeed, the facts she alleged, e.g., being required to dance or reprimanded for participating in an investigation, are discrete incidents that occurred over the course of a two-year period. Assuming the doctrine applies in Arizona, it does not apply here.

¶41 "Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 182 Ariz. 586, 588 (1995). "[T]he important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect." *Id.* at 590. But "[t]he burden of establishing that the discovery rule applies to delay the statute of limitations rest[s] on plaintiff." *Logerquist v. Danforth*, 188 Ariz. 16, 19 (App. 1996). Lorence argues that because of her stroke and speech and language impediments, "her injuries and their causative agents may not have been obvious to her." But Lorence filed a complaint with the Human Resources Department on June 10, 2020, demonstrating she was aware of Defendants' allegedly wrongful acts at that time. The discovery rule does not apply.

## VII. Injunctive Relief

¶42 Lorence sought an injunction to: (1) require ASU and the Board "to develop new policies and procedures and/or enforce existing policies and procedures that protect witnesses such as [Plaintiff] from retaliation for participating in investigations"; (2) enjoin all Defendants from retaliating against her, including "shunning" her from professional networking opportunities, and "blacklisting" her from employment and medical school applications; and (3) enjoin Swanson from withholding a letter of recommendation.

¶43 To obtain injunctive relief, the plaintiff must demonstrate that the defendant's conduct has violated her rights in some way. *See Fann v. State*, 251 Ariz. 425, 432, ¶ 16 (2021) (a plaintiff must demonstrate "irreparable injury" to obtain a preliminary injunction); *Baldwin v. Ariz. Flame Rest., Inc.*, 82 Ariz. 385, 396 (1957) (an injunction must be tailored "to meet specific purposes which are established by the facts as violative of existing law"); *Pure Wafer Inc. v. City of Prescott*, 275 F. Supp. 3d 1173, 1175 (D. Ariz. 2017) ("[B]efore a court may grant permanent injunctive relief," a plaintiff must show, *inter alia*, that she "suffer[ed] irreparable injury" for

which "an equitable remedy is warranted."). To survive a motion to dismiss, a plaintiff must state a "claim upon which relief can be granted." Ariz. R. Civ. P. 12(b)(6). As demonstrated above, Lorence failed to sufficiently allege that Defendants' conduct was contrary to law or her legal rights. The superior court properly dismissed her claim for injunctive relief.

## VIII.   Leave to Amend the Complaint

**¶44**        Lorence argues the superior court erred by not allowing her to amend her complaint before dismissal. After service of a Rule 12(b) motion to dismiss, the plaintiff may amend her complaint only with leave of court. Ariz. R. Civ. P. 15(a)(2). In general, "the non-moving party should be given an opportunity to amend the complaint if such an amendment cures its defects," before the superior court grants a Rule 12(b)(6) motion to dismiss. *Wigglesworth v. Mauldin*, 195 Ariz. 432, 439, ¶ 26 (App. 1999). But the superior court need not provide an opportunity to amend when the plaintiff fails to request one. *See id.* at 439, ¶ 27 (rejecting plaintiff-appellant's argument that the superior court erred by dismissing his complaint without first providing him leave to amend in part because he never sought leave to amend the complaint); *Carranza v. Madrigal*, 237 Ariz. 512, 515, ¶ 12 (2015) (same). Lorence never requested leave to amend. The superior court thus did not err when it did not sua sponte give her an opportunity to do so.

## IX.    Other Matters

**¶45**        Lorence also argues that the court improperly dismissed ASU as a non-jural entity and Paulson and Hawkins Daarud for lack of personal jurisdiction. Because we affirm the dismissal of all claims as to all defendants, we do not reach these arguments.

## CONCLUSION

**¶46**        We affirm the superior court's dismissal of Lorence's complaint.

**K I L E Y**, Judge, concurring in part and dissenting in part:

¶47        This Court has long held that it "will not affirm" a dismissal for failure to state a claim "unless satisfied that as a matter of law [the plaintiff] would not be entitled to relief under any interpretation of the facts susceptible of proof." *Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, 453, ¶ 7 (App. 2012) (cleaned up). In my view, Julia Lorence's complaint, though not a model of clarity, can fairly be read to allege that she was denied a letter of recommendation for discriminatory reasons. Because I am not "satisfied . . . as a matter of law" that this allegation, if proven, would not entitle Lorence "to relief under any interpretation of the facts susceptible of proof," *see id.*, I would reverse the dismissal of Lorence's claim under the Arizona Civil Rights Act, A.R.S. §§ 41-1401 to -1493.02 (the "ACRA"), to the extent her ACRA claim rests on this allegation. In all other respects, I join in the majority's decision.

¶48        Lorence's complaint alleges that her supervisor at the Mayo Clinic, Kristin Swanson, along with certain other defendants (collectively, the "Mayo Defendants"), violated the ACRA by "discriminat[ing] against" her "on the basis of her sex" and "her national origin," "direct[ly] and proximate[ly] caus[ing]" her to "sustain[] damages."[1] She supports her ACRA claim by alleging specific acts of discrimination, including, for example, that she was not invited to join her male colleagues in presenting her team's work product and that Swanson took no corrective action after Lorence complained that co-workers ridiculed her accent and the pronunciation of her name.

¶49        Paragraph 195 of Lorence's complaint, which appears in the section labeled "Second Cause of Action (Declaratory Judgment)," reads as follows:

> Also, as stated above, an actual controversy has arisen and now exists between [Lorence] and [Swanson] regarding the letter of recommendation, which [Lorence] has continuously requested.

While Paragraph 195 does not expressly state that Swanson refused to give Lorence a recommendation letter, instead merely alleging the existence of a "controversy" over the recommendation letter Lorence "requested,"

---

[1] Lorence also alleges discrimination on the basis of her disability, but, as the majority correctly notes, this allegation is time-barred. *See supra* ¶ 22.

Swanson's unwillingness to provide the requested letter can reasonably be inferred, and we must give Lorence the benefit of all reasonable inferences from her factual allegations. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

**¶50** Although Paragraph 195 does not appear in the complaint's "factual allegations" section (where it logically belongs), we must consider all of the allegations of the complaint as a whole. *See Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 51-52, ¶¶ 14-16 (App. 2001) (reversing dismissal of securities fraud claim set forth in the complaint's fifth claim for relief and reasoning that although, "standing alone, the allegations of count five do not state a valid securities fraud claim," the missing elements were alleged elsewhere in the complaint, and "[w]e are required to view the complaint as a whole to determine whether a claim for fraud has been stated"). I believe that, viewed as a whole and indulging all reasonable inferences in Lorence's favor, her complaint adequately alleges that the Mayo Defendants violated the ACRA by discriminating against her based on her sex and national origin, including by refusing to give her a letter of recommendation.

**¶51** I disagree with the majority's statement that Lorence has not argued on appeal that withholding the letter constituted a basis for her discrimination claim. *See supra* ¶ 33. In her briefing, Lorence asserted in general terms that the factual allegations of her complaint, viewed as a whole, support her various causes of action and that her complaint "alleged enough facts to show that she was entitled to relief on the legal theories that she alleged." Although Lorence made no attempt to match each specific factual allegation of her complaint with each claim the allegation allegedly supports, she was not required to do so. I find nothing in Lorence's briefing that would support a determination that she failed to properly present or preserve for appeal the argument that the Mayo Defendants violated the ACRA by refusing to give her a letter of recommendation for discriminatory reasons.

**¶52** The majority holds that, in any event, Lorence would be entitled to no relief on her ACRA claim arising out of the Mayo Defendants' failure to provide her with a letter of recommendation because she purportedly failed to plead that discrimination was the motive for their failure to provide the letter. Again, I disagree. After setting forth a variety of factual allegations of the Mayo Defendants' purportedly wrongful actions (including the allegations of Paragraph 195), the complaint alleges that the Mayo Defendants violated the ACRA by "discriminat[ing] against" Lorence on grounds of sex and national origin "[a]s described above." The phrase "[a]s described above" is all-encompassing, and I see no justification

for excluding Lorence's allegations regarding the recommendation letter from its scope.

¶53        The majority interprets the reference to retaliation in the complaint's claim for injunctive relief as some sort of admission by Lorence that the Mayo Defendants have withheld the recommendation letter *solely* for retaliatory reasons, rather than on account of her sex or national origin.[2] I see no basis for interpreting Lorence's claim for injunctive relief in a manner that limits the scope of her discrimination claim. Lorence's evident concern, as expressed in her claim for injunctive relief, that the Mayo Defendants may retaliate against her by refusing to provide a recommendation letter in the future is not inconsistent with her allegation that the Mayo Defendants discriminated against her by refusing to provide a recommendation letter in the past. And even if the two claims were inconsistent, Arizona's rules of pleading allow plaintiffs to "plead [claims] alternatively and inconsistently." *MacCollum v. Perkinson*, 185 Ariz. 179, 189 (App. 1996). Read as a whole and with the requisite liberality to allow cases "to be tried on the proofs rather than the pleadings," *see Belen Loan Invs.*, 231 Ariz. at 455, ¶ 18 (cleaned up), Lorence's complaint adequately pleads that the Mayo Defendants violated the ACRA by discriminating against her on account of her sex and national origin, including by failing to provide her with a recommendation letter.

¶54        The superior court dismissed Lorence's ACRA claim in its entirety because the court found that Lorence's complaint alleged no actionable acts of discrimination that occurred within the statutory 180-day period before Lorence filed her discrimination charge on April 2, 2021. *See* A.R.S. § 41-1481(A). Lorence's complaint does not indicate, however, *when* Lorence made her unsuccessful request for a recommendation letter. Therefore, to the extent Lorence's ACRA claim is based on Swanson's refusal to provide the recommendation letter, the dismissal of the claim cannot be affirmed on grounds of untimeliness. *See Republic Nat'l Bank of N.Y. v. Pima County*, 200 Ariz. 199, 204, ¶ 20 (App. 2001) (noting that a court cannot dismiss a claim on limitations grounds at the pleading stage unless "it appears on the face of the complaint that the claim is barred").

¶55        Because I am not "satisfied . . . as a matter of law" that Lorence has not stated a claim arising out of the Mayo Defendants' failure to provide her with a recommendation letter, *see Belen Loan Invs.*, 231 Ariz. at 453, ¶ 7

---

[2] Paragraph 189 of the complaint asks the court "to enjoin [Swanson] from retaliating against her by withholding her letter of recommendation, which [Lorence] has continuously requested."

(citation omitted), I would reverse the dismissal of her ACRA claim to the extent it rests on that basis.

¶**56**    Whether Lorence could ultimately prevail on an ACRA claim based on the Mayo Defendants' failure to provide a recommendation letter is, of course, a different matter. Courts in other jurisdictions have reached differing conclusions about whether a discrimination claim arising out of an employer's failure to provide a recommendation letter is cognizable as a matter of law. *Compare Xuan Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 959 (8th Cir. 2015) (holding, in race discrimination case, that employer's "denial of a positive recommendation letter . . . did not rise to the level" of an actionable adverse employment action) *with Reed v. Unified Sch. Dist. No. 233*, 299 F. Supp. 2d 1215, 1225-26 (D. Kan. 2004) (holding, in sex discrimination case, that supervisor's "refusal to provide [employee] with a recommendation constitutes an adverse employment action"). Whether Arizona would recognize such a claim is an open question. That question cannot, however, be answered at this stage of the proceedings. A motion to dismiss for failure to state a claim is generally not an appropriate vehicle for determining whether a novel claim is cognizable as a matter of law. *See McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (noting that dismissals at the pleading stage "are especially disfavored . . . where the complaint sets forth a novel legal theory that can best be assessed after factual development") (citation omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2023) ("The district court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions."). I see no reason to treat this case as an exception to that general rule.

¶57        Evidence that has not yet been developed—such as the substance of Lorence's communications with Swanson about the letter she requested—may bear on the viability of Lorence's claim that the Mayo Defendants violated the ACRA by denying her the letter for discriminatory reasons. Determining the viability of her claim would be premature until the parties have the chance to develop potentially relevant evidence through disclosure and discovery. Accordingly, I would reverse the dismissal of this aspect of Lorence's ACRA claim and remand for further proceedings. In all other respects, I join in the majority's decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA